MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 43
Docket:        Yor-15-188
Submitted
 On Briefs:   September 28, 2015
Decided:       March 24, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

JAMES A. EHRET

v.

DEBORAH B. EHRET

JABAR, J.

[¶1]  James A. Ehret appeals from a judgment of divorce from Deborah B. Ehret entered by the District Court (York, *Janelle, J.*).  He contends that the court erred in determining his gross income and abused its discretion in awarding spousal support and distributing the parties' marital property.  We vacate the judgment in part and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

[¶2]  The trial court's supported factual findings provide the following limited background for this appeal.  James and Deborah were married in July 1988.  They are the parents of an adult son, an adult daughter, and a minor son.  James is an airline pilot and has a greater earning capacity than Deborah.  Due to her

physical and mental health issues, Deborah has a limited ability to work and has worked little in recent years.

[¶3]  In April 2013, James filed a complaint for divorce.  The court held a contested three-day hearing in January 2015, during which Deborah requested an award of spousal support in the amount of $1,500 per month.  On March 4, 2015, the court entered a judgment of divorce and parental rights and responsibilities regarding the parties' minor son.

[¶4]  In its judgment, the court recited the parties' agreement that their minor son needed to be placed in a residential program to treat his behavioral and mental health issues, and it crafted a parental rights order that allocated the right to provide primary residence of the minor son based upon the contingencies of the son's placement.  During an "interim period"—commencing on the date of the judgment and terminating upon the son's completion of or discharge from a residential treatment program—primary residence was granted to James.  The court approved a deviation from the child support guidelines and imposed no child support obligation upon Deborah during this period.  During a "post-residential treatment period"—commencing on the son's completion of or discharge from a residential treatment program, or on March 15, 2015, if the son was not placed in a program—the parties were to share primary residence of the minor son.  The court ordered James to pay Deborah weekly child support of $225 during this period

"based on the incomes set forth in the . . . Child Support Worksheet and Child Support Order" attached to the judgment. The worksheet indicates that the court found that James's annual gross income is $95,000 and that Deborah's is $25,000.

[¶5] The court awarded Deborah three bank accounts and the marital residence and mortgage, and set aside to her a 2013 Jeep Rubicon as non-marital property. James was awarded two all-terrain vehicles, two bank accounts, and the equity in and debt on a 2009 Toyota Tacoma. The court assigned James responsibility for the outstanding loan against his retirement account and divided the balance of that account evenly between the parties. James was also assigned responsibility for two credit card debts and $28,000 in annual college tuition expenses for the parties' adult son. Deborah was assigned responsibility for one credit card debt, a utility debt, and an orthodontic debt.[1]

[¶6] The court ordered James to pay Deborah $550 per week in general spousal support until the death of either party "to allow both parties to maintain a reasonable standard of living after the divorce." In arriving at this award, the court cited the length of the parties' marriage; Deborah's "limited earning capacity given

---

[1] The judgment does not set forth the court's property distribution in table form. It assigns a monetary value to only one of the allocated liabilities and indicates the marital or non-marital nature of only two of the allocated assets.

4

the state of her physical and mental health, her age and her recent employment history"; and James's relatively greater earning capacity as an airline pilot.

[¶7] The judgment was entered on the docket on March 4, 2015. Two days later, on March 6, the court granted the parties' motion to withdraw $51,000 from James's retirement account for the purpose of funding the minor son's placement in a residential treatment program. With the parties' consent, the court ordered the parties to share liability for that withdrawal in equal proportions. On March 18, 2015, James filed a motion for specific findings and conclusions, *see* M.R. Civ. P. 52(a),[2] and a motion for a new trial and to alter or amend the judgment, *see* M.R. Civ. P. 59(a), (e), asserting that the court had abused its discretion by imposing a spousal support obligation that exceeded his ability to pay and by allocating Deborah a larger share of the marital estate. The court summarily denied the motions and James appealed.

## II. ANALYSIS OF THE ISSUES ON APPEAL

[¶8] On appeal, James contends that the court erred or abused its discretion in arriving at its finding of his gross income as indicated on the child support worksheet. He argues that the court abused its discretion by imposing a spousal support obligation that (a) is not supported by adequate findings, (b) does not

---

[2] M.R. Civ. P. 52(a) was amended after James filed his post-judgment motion, *see* 2015 Me. Rules 15 (effective Sept. 1, 2015), but not in any way that affects this appeal.

reflect a consideration of all relevant statutory factors, and (c) exceeds his ability to pay. He also challenges the court's unequal distribution of the parties' marital property. Finally, he contends that the court exceeded its statutory authority by assigning him liability for the college tuition expenses of the parties' adult son. Before addressing these contentions, we consider the impact of the court's denial of James's Rule 52 motion on the standard of appellate review.

[¶9] After the entry of a judgment, if an affected party timely moves for findings pursuant to M.R. Civ. P. 52,[3] the trial court must ensure that the judgment is supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision. *Douglas v. Douglas*, 2012 ME 67, ¶ 26, 43 A.2d 965. In the absence of a motion for specific factual findings, we ordinarily assume that a trial court found all of the facts necessary to support its judgment. *Bayley v. Bayley*, 602 A.2d 1152, 1154 (Me. 1992). However, "when a motion for findings has been [timely] filed and denied, we cannot infer findings from the evidence in the record." *Douglas*, 2012 ME 67, ¶ 27, 43 A.3d 965. In these circumstances, if the judgment does not include specific findings that are

---

[3] Pursuant to M.R. Civ. P. 52(a), the deadline for filing a motion for findings is seven days "after the statement of the decision in open court, or the entry of the decision or judgment on the docket, whichever comes first." Pursuant to M.R. Civ. P. 52(b), the deadline for filing a motion for amended or additional findings is fourteen days after entry of the judgment.

6

sufficient to support the result, appellate review is impossible and the order denying findings must be vacated. *See id.*

[¶10] Fourteen days after entry of the judgment, James filed a motion, pursuant to M.R. Civ. P. 52(a), for specific factual findings that (1) his income in 2014 was consistent with the figures shown on his financial statement; (2) the court's property division allocated more than three times as much debt to him than to Deborah; (3) the value of Deborah's nonmarital bank accounts exceeded $400,000; (4) the court's spousal support award exceeded Deborah's request for spousal support by more than $10,000 per year; and (5) the spousal support award exceeded his ability to pay. To the extent that the motion requested findings on the issue of James's income, we disregard its caption and treat it as a timely Rule 52(b) motion for further findings because the court made an express finding about this issue. *See Dube v. Dube*, 2016 ME 15, ¶ 10 n.8, --- A.3d ---.

[¶11] To the extent that the motion requested findings regarding the values of the assets and liabilities subject to the distributive order and an explanation of how those facts affected the court's award of spousal support, the motion was not timely filed because the court's judgment contained no findings on these issues. *See id.* However, the determination of James's income necessarily plays a role in (1) the economic reality of James's post-divorce circumstances—a factor that the court must have considered in distributing the marital estate—and (2) James's

ability to pay any award of spousal support—a factor that the court must have considered in awarding spousal support. *See* 19-A M.R.S. §§ 951-A(5)(B), 953(1)(C) (2015). Therefore, if we conclude that the court erred by failing to provide the findings requested on James's income, the court, on remand, would have to reconsider the relationship between James's income, the order of property distribution, and the order of spousal support.

[¶12] Because this appeal follows the denial of James's timely motion for additional findings on the issue of his income, we confine our review to the court's explicit findings on that issue and consider whether those findings are both supported by the record and adequate to support the contested provisions of the judgment.

A. James's Gross Income

[¶13] James contends that the trial court either clearly erred in finding that he has annual gross income of $95,000, or abused its discretion by imputing income to him without first determining that he was voluntarily underemployed.

[¶14] If a divorce court finds that a party is voluntarily underemployed, the court may impute income to that party for the purpose of calculating that party's child or spousal support obligations. *Koszegi v. Erickson*, 2004 ME 113, ¶ 14, 855 A.2d 1168; *Wrenn v. Lewis*, 2003 ME 29, ¶ 18, 818 A.2d 1005 (citing 19-A M.R.S.A. § 951-A(5)(B), (D), (E) (Supp. 2002) and 19-A M.R.S.A.

8

§ 2001(5)(D) (1998)). When a divorce court imputes income to a party and takes judicial notice of facts for that purpose, its judgment should contain findings regarding the amount of and basis for the income imputed. *See Payne v. Payne*, 2006 ME 73, ¶ 11, 899 A.2d 793. "A court's determination of a party's income in a divorce proceeding is a factual finding that we review for clear error." *Id.* ¶ 7. In applying the clear error standard, we will vacate a factual finding if it is not supported by sufficient, competent record evidence. *See id.* ¶¶ 7, 9-11.

[¶15] The divorce judgment contains no findings regarding James's income. The only indication of the court's income determinations is found in the child support worksheet attached to the judgment, which lists James's annual gross income as $95,000. We are unable to determine how the court arrived at this figure. James's financial statement indicates that he has an annual gross income of $87,012. At trial, some evidence was presented that may have raised a question of whether James was voluntarily underemployed, and whether his employment-related expense reimbursements should be included in his income. *See* 19-A M.R.S. § 2001(5)(B), (D) (2015); *Dumas v. Milotte*, 2016 ME 3, ¶ 9, --- A.3d ---. However, in the absence of explicit findings and conclusions regarding the factual and legal basis for the court's gross income determination, we cannot review that determination effectively. *Williams v. St. Pierre*, 2006 ME 10, ¶ 9, 889 A.2d 1011.

[¶16]   Because the court denied James's motion for specific findings regarding his income, we cannot assume that the court implicitly found facts sufficient to support its income determination, and we cannot decide whether the court's findings were clearly erroneous.  *See id.* ¶¶ 9-10.  We therefore vacate the court's child support order and underlying gross income determination, and remand for the issuance of findings and conclusions on the income issues raised in James's motion for further findings.  *See Dumas*, 2016 ME 3, ¶ 10, --- A.3d ---.

B.    Spousal Support

[¶17]   Because the determination of James's income provides a factual foundation for any award of spousal support, *see* 19-A M.R.S. § 951-A(5)(B), (E) (2015), we must also vacate the order of spousal support.  On remand, the court must consider—and should explain how it considered—all of the relevant factors set forth in the spousal support statute, 19-A M.R.S. § 951-A(5) (2015).  This explanation should include, at a minimum, a discussion of how the court assessed Deborah's earning capacity, and findings regarding the effect of the child support order and property distribution order on James's ability to pay any award of spousal support.  *See* 19-A M.R.S. § 951-A(5)(B), (D)-(E).

C.    Property Distribution

[¶18]  Finally, because the court must consider the determination of James's income in crafting an equitable distribution of the parties' assets and liabilities,

*see* 19-A M.R.S. § 953(1)(C), and because the court must consider the consequences of its distributive order in assessing any award of spousal support, *see* 19-A M.R.S. § 951-A(5)(P)(1), we must also vacate the order distributing the parties' property. On remand, the court shall classify the parties' property as marital or nonmarital, *see Ramsdell v. Worden*, 2011 ME 55, ¶ 11, 17 A.3d 1224; assign monetary values to the property subject to the distributive order to the extent that the parties offered credible information on that property, *see Laqualia v. Laqualia*, 2011 ME 114, ¶ 12, 30 A.3d 838; display the property distribution in table form;[4] and explain its rationale for the ultimate distribution of the parties' marital estate.

The entry is:

> Order denying motion for further findings with regard to James's income vacated. Child support order, spousal support order, and property distribution vacated. Remanded for further proceedings consistent with this opinion.

---

[4] "We have consistently encouraged courts to include tables in their judgments demonstrating the overall distribution of property to the divorcing parties." *Bond v. Bond*, 2011 ME 54, ¶ 19, 17 A.3d 1219. "Such a table is valuable to the parties and facilitates appellate review because it demonstrates that the court considered the overall allocation of property and debts, and under[stood] the ultimate effect of the divorce judgment." *Id.*

**On the briefs:**

Gene R. Libby, Esq., and Tara A. Rich, Esq., Libby O'Brien Kingsley & Champion, Kennebunk, for appellant James A. Ehret

Wendy Moulton Starkey, Esq., Rose Law, LLC, York, for appellee Deborah B. Ehret

York District Court docket number FM-2013-58
FOR CLERK REFERENCE ONLY