MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2024 ME 63
Docket:          Yor-23-170
Submitted
  On Briefs:     October 18, 2023
Decided:         August 13, 2024

Panel:           STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

GREGORY R. FLAGG

v.

SHAUNA K. BARTLETT

LAWRENCE, J.

[¶1]  Gregory R. Flagg appeals from an amended judgment of the District Court (York, *Tice, J.*) granting Shauna K. Bartlett's motion to modify the parties' child support order, denying Flagg's cross-motion to modify the parties' divorce judgment and child support order, and modifying Flagg's child support obligation.  We also treat Flagg's notice of appeal as an appeal from the court's order denying his motions for findings of fact and conclusions of law.  *See* M.R. App. P. 2B(c)(2)(B).  Flagg contends that the court erred in determining that the parties provide substantially equal care and in modifying his child support obligation.  We vacate the amended judgment, the amended child support

---

* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

2

order, and the order denying Flagg's motions for findings of fact and conclusions of law, and we remand.

## I. BACKGROUND

### A. Procedural History Prior to Amended Judgment

[¶2] On July 23, 2012, Flagg filed a complaint for divorce against Bartlett. On November 1, 2012, the Family Law Magistrate (*Cadwallader, M.*) entered a judgment granting the divorce on the grounds of irreconcilable marital differences and incorporating the parties' settlement agreement, which governed the parties' parental rights and responsibilities and support obligations. The parties' settlement agreement established that the parties had shared parental rights and responsibilities, shared physical residence, and "parenting time . . . on a substantially equal basis" regarding their two children.[1]

---

[1] The agreement stated that the parenting time allocation was similar to what the parties had used "since their May 2012 separation." Pursuant to the parenting schedule, the children resided with Bartlett from Sunday at 9:00 a.m. through Wednesday at 5:00 p.m. and with Flagg from Wednesday at 5:00 p.m. through Sunday at 9:00 a.m. The schedule also contained specific provisions for school pick up, holidays, and vacations.

The agreement incorporated by reference a child support order and stated that Flagg must pay child support of $80.75 per week "as set forth in the attached Child Support Worksheet." The agreement also required each party to pay half of agreed-to extracurricular activities and to "split all . . . uninsured medical, dental, orthodontic, and counseling expenses."

[¶3]   In accordance with the settlement agreement, the magistrate entered a child support order on November 1, 2012, requiring Flagg to pay $81 weekly to Bartlett.   The child support order provided that the support obligation was "based on the fact that the parents are providing substantially equal care" for the children.[2]

[¶4]  On March 22, 2021, Bartlett filed a motion to modify Flagg's child support obligation, stating that "[c]hild [s]upport has not been re-visited since the initial order in 2012."   On April 23, 2021, Flagg filed a cross-motion to modify.  Flagg argued that circumstances had substantially changed since the divorce judgment regarding primary residential care, rights of contact, and child support.[3]  The court held a hearing on November 29, 2022.  On February 4, 2023, the court entered a judgment denying Bartlett's motion to modify and granting Flagg's cross-motion to modify.

---

[2] The order stated that "[t]he parties are sharing day care costs equally, and [Flagg] alone is paying the health insurance premium.  Uninsured medical expenses after the date of this order . . . shall be shared equally."

[3]  Specifically, Flagg contended that "[s]ince at least 2015 . . . we have followed a parent-child contact schedule where I provide care (meals/snacks, etc) on 13 out of 14 days, and [the children] are overnight with me for more than half of the time."  He argued that since March 2021 Bartlett "suddenly and drastically changed her level of participation in the children's lives"; that he had previously transported the children to their sports activities; that Bartlett only recently "made transportation arrangements with third parties"; and that he would like to continue transporting the children.  Flagg requested that the court "[m]emorialize the parent-child contact schedule that the parties have been following since at least 2015," "recalculate child support," and order Bartlett to support the children.

4

[¶5]  The court determined that Bartlett was not providing substantially equal care,[4] granted primary residence of the children to Flagg, and outlined agreed-upon rights of contact.  The court stated that Flagg "request[ed] that he not receive child support from [Bartlett]," and it thus did not make specific findings about the parties' incomes.  The court ordered a downward deviation from the child support guidelines and did not award child support.[5]  The court also stated that Flagg had established a substantial change in circumstances from the original judgment.

[¶6]  Bartlett filed a motion to alter or amend the judgment, or for relief from judgment, and for clarification pursuant to M.R. Civ. P. 59(e) and M.R. Civ. P. 60(b)(6).  Bartlett contended that the court had erred because there was not a substantial change in circumstances warranting modification of the

---

[4]  Specifically, the court determined that the parties' agreed-upon contact schedule, which the parties "modified in 2013 and has been in place since that time," "provides for more overnights, 8 out of 14, at [Flagg's] residence"; that Flagg had "significant involvement in the [children's] sports activities"; that Flagg was the first contact if the children needed something at school or sports; that Flagg was more involved in taking the children to medical appointments; and that Flagg paid for most, if not all, medical expenses and sports activities.  The court determined that Bartlett's care was "substantial" but not "substantially equal" to Flagg's care.

[5]  The court entered a child support order, which was incorporated into the judgment, requiring Bartlett to pay zero dollars to Flagg.

residential arrangement and the finding that Flagg provides substantially more towards the children's care was erroneous.[6]

**B.      Amended Judgment on Motions to Modify**

[¶7]   On May 3, 2023, the court granted Bartlett's motion to alter or amend the judgment, or for relief from judgment, and for clarification, and it entered an amended judgment that, inter alia, granted Bartlett's motion to modify the parties' child support, denied Flagg's cross-motion to modify the parties' divorce judgment and child support, and modified Flagg's child support obligation.  The court's findings in the amended judgment are as follows.

[¶8]   Pursuant to the divorce judgment and the parties' settlement agreement, Flagg provided residential care for the children for more than half of the time, but the parties agreed to consider the arrangement a shared residential arrangement and further agreed that, for child support purposes, they were providing substantially equal care of the children.  The parties agreed to modify the contact schedule in 2013, but the designation of shared residence

---

[6]    Bartlett argued, inter alia, that the parties had agreed in 2012 "to *shared residential responsibility*"; that "per agreement of the parties, since 2013 [she] has had *more* overnight time with the minor children than she did under the 2012 divorce judgment"; that the schedule in place over the last eight years was agreed to by the parties as a shared schedule; that other circumstances were insubstantial; and that the children have thrived under the prior shared residential arrangement. Flagg filed a response to Bartlett's motion, and Bartlett filed her objection to Flagg's response.

6

did not change, and the modified schedule has been in place since 2013.[7] The "parties have been co-parenting in an effective manner under a shared residential custody arrangement since 2012" and "[t]he children appear to be thriving."

[¶9] "Since 2012, the parties have *not* provided equal care for the children"; Flagg "*provides more* toward the children's total care including their residential care, recreational and sport[ing activities], medical and dental health care, and after school care." (Emphasis added.) However, the "level of care has not changed . . . in any significant degree from the time that the parents agreed to shared parental rights and responsibilities and shared residence."

[¶10] Flagg has brought the children to nearly all medical appointments since 2012, and Bartlett has "attended far less routinely." Bartlett testified that she has not been presented with medical bills from Flagg. Flagg testified that he did not present the bills to Bartlett to avoid conflict. Flagg has paid these medical bills over the past ten years. "The children's orthodontic care began in September 2021," and the parents are participating substantially equally in that orthodontic care.

---

[7]  The modified contact schedule "called for . . . a two week schedule where the [children] had 6 overnights out of 14 with [Bartlett] and the remaining with [Flagg]."

[¶11] Bartlett has relied on Flagg's flexible schedule to accommodate the children's needs. In January 2019, Bartlett changed jobs, and Flagg was available to rearrange his day if necessary for the children. The children rode the bus to Flagg's house every day after school, even on Bartlett's residential days. This was a positive routine for the children. "This changed in October 2019 when [Bartlett] was able to work from home," which "was likely somewhat disruptive for the children."[8]

[¶12] The children both participate in sports, and Bartlett agreed that sports are Flagg's "thing" and praised Flagg for his strength in this area. Flagg has served as a coach or volunteer on the children's teams, attends nearly all sports events, and has mostly done a good job presenting Bartlett with options when decisions arise. Flagg pays expenses to support the children's travel sports teams.

[¶13] For several years, Flagg drove the children to practices and games, even on Bartlett's residential days with the children, and this one-on-one time was good for the children. Bartlett would occasionally bring the children to

---

[8] The court stated that when school resumed after the pandemic "do children not typically got off the bus at [Flagg's] home." Although this finding is unclear, the mother testified that in 2020 after the children returned to school, "we decided that it was best to have them get off the bus at [Flagg's] house, and then I would pick the kids up there."

8

these events. Starting in April 2021, on her residential days, Bartlett drove the children herself or arranged for third parties to drive the children, even though Flagg was available, "which was disruptive for the children." The children were late for practices and games multiple times due to this new routine, and this negatively impacted their participation in these activities.

[¶14] The court determined that Flagg did not establish a sufficiently substantial change of circumstances to justify modification of the shared primary residence[9] and that it could not find that designating Flagg as the primary residential parent would better serve the children's best interests. The court then stated that it "need not address the issue of whether each parent is providing substantially equal care." The court added, "Assuming arguendo, however, that this was a consideration, the court now concludes that the care provided by both parents, while different, is substantially equal." The court memorialized the contact schedule that the parents had agreed upon and used since 2013 and provided instructions regarding transportation to sporting activities.

[¶15] The court determined that the child support order had not been changed since 2012 and that the parties' incomes had changed substantially,

---

[9] Flagg does not challenge this determination on appeal.

and it thus granted Bartlett's request for review of the child support order. The court determined the parties' incomes and entered an amended child support order requiring Flagg to pay $185 weekly to Bartlett and providing a schedule for payment of any retroactive arrearage.

[¶16]  On May 16, 2023, Flagg filed a notice of appeal, *see* 19-A M.R.S. § 104 (2024); M.R. App. P. 2B(c)(2)(B), and a motion for findings of fact and conclusions of law, with proposed findings, pursuant to M.R. Civ. P. 52(a).  Flagg "request[ed] additional findings because it is not clear what facts the court relied on to reach its conclusion that [Bartlett] provides substantially equal care of the children."  On May 17, 2023, Flagg filed a supplemental version of the motion.  In his supplemental motion, Flagg argued that it was "unclear from the judgment what activities or contributions by [Bartlett] led the court to its conclusion," and he requested additional findings.

[¶17]  Bartlett filed an opposition on June 6, 2023, and Flagg filed his response on June 8, 2023.  On June 22, 2023, the court entered an order denying Flagg's motions for findings of fact and conclusions of law.

## II.  DISCUSSION

[¶18]  Flagg contends that the court erred in modifying the child support "based on a new determination that the parties provide substantially equal

care" because the court also found that he "provides more toward the children's total care." Flagg argues that he provides 57% of the children's residential care, Bartlett's contributions overall are less than his, a determination of shared residence does not mean that the parties provide substantially equal care, there is no competent evidence supporting the court's finding that the parents provide substantially equal care, and Flagg is the primary residential care provider.

[¶19] "We review a trial court's grant or denial of a motion to modify child support . . . for an abuse of discretion, and we review factual findings for clear error." *Dickens v. Boddy*, 2015 ME 81, ¶ 12, 119 A.3d 722. "Review for an abuse of discretion involves resolution of three questions: (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness." *McLeod v. Macul*, 2016 ME 76, ¶ 6, 139 A.3d 920 (quotation marks omitted).

[¶20] We also "review for an abuse of discretion the denial of a motion for further findings of fact." *McCarthy v. Guber*, 2023 ME 53, ¶ 10, 300 A.3d 804.

"After the entry of a judgment, if an affected party timely moves for findings pursuant to M.R. Civ. P. 52," then the "court must ensure that the judgment is supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision." *Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101. "[I]f the judgment does not include specific findings that are sufficient to support the result, appellate review is impossible and the order denying findings must be vacated." *Id.*

[¶21] "If it has been 3 years or longer since" a child support order "was issued or modified, the court . . . shall review the order without requiring proof or showing of a change of circumstances." 19-A M.R.S. § 2009(3) (2024). "[A] court is free to consider *all* the circumstances relevant to a proper determination of the child support obligation, including whether the parties are providing substantially equal care . . . ." *Dickens*, 2015 ME 81, ¶¶ 14, 16, 119 A.3d 722 (quotation marks omitted); *cf. Jabar v. Jabar*, 2006 ME 74, ¶¶ 7-8, 16, 899 A.2d 796. Whether the parties are providing substantially equal care is relevant under the child support guidelines because a parent is defined as the "[p]rimary residential care provider" if that parent "provides residential care for a child for more than 50% of the time on an annual basis," *unless* the parents

each provide substantially equal care. 19-A M.R.S. § 2001(8) (2024). Similarly, 19-A M.R.S. § 2001(7) (2024) defines "[p]rimary residence" to mean "the residence of a child where that child receives residential care for more than 50% of the time on an annual basis *if the parents do not provide substantially equal care.*" (Emphasis added.)

[¶22] Under the child support guidelines, "'[s]ubstantially equal care' means that both parents participate substantially equally in the child's total care, which may include, but is not limited to, the child's residential, educational, recreational, child care and medical, dental and mental health care needs." 19-A M.R.S. § 2001(8-A) (2024). This finding is based "on an open-ended inquiry requiring findings regarding the extent to which the parents participate in the child's total care" and is "grounded in findings of fact." *Mitchell v. Krieckhaus*, 2017 ME 70, ¶¶ 17, 19, 158 A.3d 951 (quotation marks omitted).

[¶23] Here, the court determined that (1) there was not a substantial change in circumstances warranting a change in the parties' shared primary residence of the children, (2) it could not determine that switching to "primary residential custody would better serve" the children's best interests, and (3) it

thus "*need not address the issue* of whether each parent is providing substantially equal care." (Emphasis added.)

[¶24] However, shared primary residence is a legal concept distinct from substantially equal care. Title 19-A M.R.S. § 1653 (2024) incorporates the concept of shared primary residence in allowing a court to award "shared parental rights and responsibilities." 19-A M.R.S. § 1653(2)(D)(1). A court's award of "shared parental rights and responsibilities" can "include either an allocation of the child's primary residential care to one parent and rights of parent-child contact to the other parent, or a *sharing of the child's primary residential care by both* parents." *Id.* (emphasis added). Shared primary residence allows a court to designate residential arrangements that are not necessarily precisely equal as nonetheless shared, to convey that both residences are equally a child's home. *See id.*

[¶25] In contrast, under the child support guidelines, if a parent provides more than half of the residential care, that parent is necessarily the primary residential care provider. *See id.* § 2001(8). The "guidelines generally require the noncustodial parent to pay child support to the parent with primary residence to support that economic obligation." *Dickens*, 2015 ME 81, ¶ 17, 119 A.3d 722. The exception to this rule applies when the court determines

14

that the parents provide substantially equal care.[10] *See* 19-A M.R.S. § 2001(8); *Dickens*, 2015 ME 81, ¶ 17, 119 A.3d 722 (explaining that there is a different support calculation if the "parties provide substantially the same amount of care (and presumably bear substantially the same economic burdens)").

[¶26]  The court recognized that because more than three years had passed since the original child support order issued in this case, it was required to review that order even if there was no showing of a substantial change in circumstances.  *See* 19-A M.R.S. § 2009(3).  The court was required to modify the prior order "if the amount of the child support award" under the prior order "differ[ed] from the amount that would be awarded under the guidelines." *Id.* As a part of this review, the court was initially "free to consider *all* the circumstances relevant to a proper determination of the child support obligation, *including whether the parties are providing substantially equal care.*" *Dickens*, 2015 ME 81, ¶¶ 14, 16, 119 A.3d 722 (quotation marks omitted and emphasis added).

---

[10]  It is possible for parents to provide substantially equal care even if a child spends more residential time with one parent. *See, e.g.*, *Pratt v. Sidney*, 2009 ME 28, ¶¶ 10-11, 967 A.2d 685.

[¶27]  The court found, however, that Flagg "provides more toward the children's total care including their residential care."[11]  Thus, in order to determine that Flagg was not the primary residential care provider for purposes of child support, the court had to consider whether Flagg and Bartlett provided substantially equal care and, based on an open-ended inquiry with "findings regarding the extent to which the parents participate in the child[ren]'s total care," conclude that they provided substantially equal care. *Mitchell*, 2017 ME 70, ¶ 19, 158 A.3d 951 (quotation marks omitted); *see* 19-A M.R.S. § 2001(8); *see also* 19-A M.R.S. § 2006(4), (5)(D-1) (2024); *Dickens*, 2015 ME 81, ¶¶ 15-17, 119 A.3d 722.  The court's failure to consider whether the parties provided substantially equal care constituted an abuse of discretion. *See McLeod*, 2016 ME 76, ¶ 6, 139 A.3d 920.

[¶28]  After the court determined that it "need not address" whether the parties provide substantially equal care, it then stated that "[a]ssuming arguendo, however, that this was a consideration, the court now concludes that the care provided by both parents, while different, is substantially equal."  Yet

---

[11]  The court found that the parties' modified contact schedule that had existed since 2013 included "a two week schedule" where the children "had 6 overnights out of 14 with [Bartlett] and the remaining with [Flagg]."  This means that Flagg had the children for eight out of fourteen overnights, which is more than half.

as discussed above, *see supra* ¶¶ 14, 23, the court made this statement in the context of declining to change the parties' residential parental rights and responsibilities, not as a part of its consideration of child support. It is thus not clear for the purposes of appellate review if or how the court assessed whether the parties provide substantially equal care for purposes of determining child support.[12] *See Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101; *cf. Jabar*, 2006 ME 74, ¶¶ 16-17, 899 A.2d 796.

[¶29] Further, the court's conclusion that the parents provide "different" yet "substantially equal" care conflicts with many of its factual findings regarding Flagg's provision of care, in that the court's amended judgment retains much of the same language as its original judgment where it concluded that Bartlett did *not* provide substantially equal care. For example, the court found that "[s]ince 2012, the parties have *not* provided equal care for the children" and that Flagg "*provides more* toward the children's total care

---

[12] The court did check the box in the amended child support order stating that the "support obligation is based on the fact that the parents are providing substantially equal care for their child(ren)," and it filled out the supplemental child support worksheet, which is "used when parents provide substantially equal care." However, the court made no additional findings regarding this conclusion specific to child support and, as discussed herein, many findings that it did make, in its amended judgment, are not in line with this final determination. *See Ehret v. Ehret*, 2016 ME 43, ¶¶ 9, 15-16, 135 A.3d 101.

including their residential care, recreational and sport[ing activities], medical and dental health care, and after school care."  (Emphasis added.)

[¶30]   The court also determined that "the level of care has not changed . . . in any significant degree from the time that the parents agreed to shared parental rights and responsibilities and shared residence."  However, as discussed above, the parties' prior agreement with respect to shared parental rights and responsibilities and shared residence is separate from a determination that the parties provide substantially equal care.  *See Mitchell*, 2017 ME 70, ¶ 19, 158 A.3d 951 ("As we have made clear, the determination of substantially equal care is based on more than a rigid calculation of time spent with each parent or what responsibilities the parents share."); *Pratt v. Sidney*, 2009 ME 28, ¶¶ 10-11, 967 A.2d 685 (stating that "residence and the time spent with the child are not the only factors relevant to whether the parents are providing substantially equal care").  Further, the parties now disagree about whether they provide substantially equal care.  *See Mitchell*, 2017 ME 70, ¶ 17, 158 A.3d 951 (explaining that "absent an agreement by the parties, the court is placed in the position of a fact-finder on a disputed issue").

[¶31]   In addition to the internal conflict, the court's express factual findings in the amended judgment are insufficient to support its ultimate

conclusion that the parties provide substantially equal care. Nor can we assume that the "court found all of the facts necessary to support its judgment" that Bartlett provides substantially equal care, because Flagg filed, and the court denied, motions requesting additional findings regarding the court's substantially equal care determination. *Ehret*, 2016 ME 43, ¶¶ 9, 12, 135 A.3d 101 (explaining that "when a motion for findings has been timely filed and denied, we cannot infer findings from the evidence in the record" (quotation marks and alteration omitted)).

[¶32] Based on our review of the court's award of child support, it is clear that the court's incorporated child support worksheet and amended child support order contain determinations that directly contradict several findings in the court's amended judgment that would be relevant to the assessment of whether the parties are providing substantially equal care. Thus, the court abused its discretion when it ordered Flagg to pay $185 per week in child support.

[¶33] We therefore vacate the amended judgment, the amended child support order, and the order denying Flagg's motions for findings of fact and conclusions of law, and we remand for the court to determine whether the parties are providing substantially equal care for the purpose of determining

child support and to make findings of fact and conclusions of law consistent with its determination. *See McCarthy*, 2023 ME 53, ¶¶ 18-19, 300 A.3d 804; *Ehret*, 2016 ME 43, ¶¶ 9, 15-16, 135 A.3d 101.

The entry is:

> Amended judgment, amended child support order, and order denying motions for findings of fact and conclusions of law vacated. Remanded for further proceedings consistent with this opinion.

---

Jeanette M. Durham, Esq., Maine Family Law LLC, Kennebunk, for appellant Gregory R. Flagg

Dana E. Prescott, Esq., Prescott Jamieson Murphy Law Group, LLC, Saco, for appellee Shauna K. Bartlett

York District Court docket number FM-2012-122