MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2025 ME 44
Docket:       Cum-24-122
Submitted
  On Briefs:  September 25, 2024
Decided:      May 22, 2025

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.


SOKUNTHIM NOU

v.

ROTANAK HUOT


HORTON, J.

[¶1]  Sokunthim Nou appeals from a divorce judgment entered by the District Court (Portland, *Nofsinger, J.*) in which the court allocated property between her and Rotanak Huot and awarded shared parental rights and responsibilities and shared residency of their children.  Sokunthim[1] appeals the court's property determinations on multiple grounds,[2] and we reject all but one of her contentions.  We conclude that the court's finding regarding Sokunthim's income is unsupported by the evidence.  Because this finding may have

---

[1]  We refer to the parties by first name, rather than by surname, in keeping with their preference and custom.

[2]  Sokunthim does not challenge the custody determination.

influenced other financial aspects of the judgment, we vacate the division of property and child support award and remand for further proceedings.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the procedural record and the court's findings of fact, which are supported by the record unless otherwise indicated.  *See Sullivan v. George*, 2018 ME 115, ¶ 2, 191 A.3d 1168.

[¶3]  Rotanak and Sokunthim met after immigrating to the United States from Cambodia in 2004 and 2007, respectively.  They were married in 2016 and have twin daughters.  Before and during the marriage, the parties ran multiple businesses together.

[¶4]  In February 2019, they formed a limited liability company (LLC), Punky's LLC, to own and operate Punky's, a convenience store and food establishment in Portland.  In April 2019, they formed another LLC, Banha Huot, LLC, to own and operate a multiunit rental property in Portland.  Banha Huot, LLC, was later renamed Panyah LLC.  Sokunthim was the only named member of the two LLCs, but both parties were involved in the operation of the convenience store and the rental property.  The parties also own a home in Scarborough that was purchased in December 2019 in Sokunthim's name only.

The purchases of the real properties were funded, in part, through substantial gifts of money made by Sokunthim's parents to both parties.

[¶5] The parties separated in 2020, shortly after Sokunthim suffered a medical event in February 2020, resulting in a brain injury that affected her ability to recall events. Rotanak ceased his involvement in the operation of the convenience store when the parties separated. He now works as a cook in a restaurant. Sokunthim continues to work at Punky's and treats the income from the business as her own.

[¶6] Sokunthim filed for divorce on July 24, 2020. Over the next three years, the parties engaged in two unsuccessful mediations and the court (*Cadwallader, M.*) appointed a guardian ad litem at Sokunthim's request. Because English is not either party's first language, both parties requested that interpreter services be provided at court events. However, an interpreter was not available at three status conferences scheduled in 2022 and 2023. Two of the conferences did not proceed because of the lack of an interpreter, but the third conference went forward. Sokunthim was not represented by counsel at that conference, and it is not clear whether she objected when the court held the conference without an interpreter present. The record is unclear as to whether an interpreter was present at a fourth status conference.

[¶7]  On April 25, 2023, Sokunthim, with the assistance of the Volunteer Lawyers Project, filed a motion seeking an enlargement of time for discovery. After a conference on the motion, the court ordered that "[i]f Plaintiff seeks discovery[,] she shall serve [any] discovery request prior to the next court event."  At the next court conference on August 24, 2023, Sokunthim requested to take discovery, and the court denied the request on the basis that it should have been made earlier.

[¶8]  The court (*Nofsinger, J.*) held a trial on December 15, 2023, and January 3, 2024, with both parties represented by counsel and two interpreters present each day.  At the outset, the court stated, "My understanding is that the parties understand English well enough so that they'll just be asking for interpretation when necessary, is that correct?"  Sokunthim responded, "Yes, your Honor."  The court heard testimony from the parties, a real estate broker, Sokunthim's accountant, and Sokunthim's father.  On the first day of the trial, the court announced that the second day of the trial, although originally scheduled for an entire day, would be reduced to a half-day due to scheduling issues.  The court assured the parties that if more time proved necessary, it would be provided, and neither party objected.  Near the end of the scheduled time for the second day, Sokunthim's attorney requested a short break before

calling Sokunthim for rebuttal, but the court stressed the need to end on time, and Sokunthim's attorney replied, "Okay. Well, we'll just start then."

[¶9] The court entered a comprehensive divorce judgment on January 30, 2024. In the portions of the judgment relevant to this appeal, the court determined that all the parties' assets were marital because they were acquired during the marriage, through significant effort by both parties, and because Sokunthim had not met her burden to prove that any of their value should be deemed nonmarital. Accordingly, based on its finding that the net value of the parties' properties was $1,709,376, the court allocated $885,433, or just over half, to Sokunthim and the remainder to Rotanak. The court's judgment awarded Panyah LLC to Rotanak and implicitly awarded Punky's LLC to Sokunthim.[3] The court also found Sokunthim's income to be $435,598, based largely on Rotanak's testimony that Punky's had sales between $2,500 and $3,000 daily while he had worked there, half through credit card purchases and half through cash purchases. The court assumed Punky's was open at least 300 days a year, calculated annual gross sales at $750,000, and subtracted the cost of goods and services to derive Sokunthim's annual income.

---

[3] In the table listing the parties' assets and debts, Punky's LLC is listed in the column for Sokunthim. However, the portion of the judgment allocating property omits mention of Punky's LLC, although it allocates Panyah LLC to Rotanak. On remand, the court may clarify its intent to award Punky's LLC to Sokunthim.

[¶10] Sokunthim timely filed a motion for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52 and a motion for a new trial pursuant to M.R. Civ. P. 59. In the Rule 52 motion, Sokunthim proposed twenty findings of fact and four conclusions of law.[4] The proposed findings and conclusions relevant to the issues on appeal are as follows:

- The three parcels of real estate were purchased primarily with Sokunthim's nonmarital funds;

- Rotanak had engaged in economic misconduct during the marriage; and

- Sokunthim's income was accurately reported in her personal income tax returns.

[¶11] In the Rule 59 motion, Sokunthim contended that she was not provided sufficient time at trial. She noted that the trial "was originally scheduled for a full, two-day trial" but the second day "was limited to half a day due to the Court's scheduling constraints." In support of her contention, Sokunthim noted that (1) both parties needed interpreters, which slowed the trial; and (2) she had "repeatedly brought to the Court's attention the impact that her brain injury has on the speed at which she can process information."

---

[4] The topics covered by the proposed findings were wide-ranging and included Rotanak's contact with the children, the nature of the gifts from Sokunthim's parents, economic misconduct by Rotanak, Rotanak's abuse of Sokunthim, and the accuracy of Sokunthim's annual income on her tax returns. As such, many of the proposed findings are not relevant to this appeal and will not be discussed further.

[¶12]   The trial court denied both motions.  In denying the Rule 52 motion, the court found that it had made sufficient findings.  In denying the Rule 59 motion, the court pointed out that it had provided additional trial time when requested; that its decision was not affected by time constraints; and that Sokunthim had failed to object on the record to the amount of trial time, request additional trial time as an accommodation, or identify evidence that she could not present.

[¶13]   Sokunthim filed a timely notice of appeal.  *See* M.R. App. P. 2B(c)(2).

## II.  DISCUSSION

[¶14] Sokunthim raises three issues on appeal.  First, she asserts that the court erred in deciding that her income was $435,598, an amount more than ten times the gross income figures on her recent tax returns.  Next, she argues that the court erred in determining that all the real property was marital and that the court abused its discretion in distributing the property by awarding Rotanak just under half of the net value of assets.  Finally, she contends that her due process rights were violated by the court's failure to provide her with interpreter assistance at status conferences and by the court's reduction of trial time from two days to one and a half days.

[¶15]  The trial court "has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review."  *Bayley v. Bayley*, 602 A.2d 1152, 1153-54 (Me. 1992).  When "an affected party timely moves for findings pursuant to M.R. Civ. P. 52, the trial court must ensure that the judgment is supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision."  *Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101 (footnote omitted).  Upon the denial of a timely filed Rule 52 motion, "we cannot infer findings from the evidence in the record" regarding areas covered in the motion's proposed findings.  *Id.* (quotation marks omitted).  "In these circumstances, if the judgment does not include specific findings that are sufficient to support the result, appellate review is impossible and the order denying findings must be vacated."  *Id.*

## A.    Determination of Sokunthim's Income

[¶16]  "A court's determination of a party's income in a divorce proceeding is a factual finding that we review for clear error."  *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793. "A court's determination of a party's income is clearly erroneous only if there is no competent evidence in the record to

support it." *Howard v. White*, 2024 ME 9, ¶ 7, 308 A.3d 213 (quotation marks omitted).

[¶17] Sokunthim argues that the trial court erred both in finding that she treats Punky's income as her own and in valuing the income from Punky's. Because her Rule 52 motion for findings included a proposed finding that her personal income tax returns accurately reflect her income, we cannot infer that the court made findings sufficient to support its determination.

[¶18] The court explicitly found, with support in the record, that Sokunthim treats the income from Punky's as her own, and the court therefore allocated the profits from Punky's to Sokunthim in determining Sokunthim's annual income. Sokunthim's tax returns, which Sokunthim and her accountant testified were accurate, indicate that Punky's gross sales and net profits were $334,165 and $18,969 respectively in 2022, $357,749 and $30,610 in 2021, and $335,748 and $34,876 in 2020. However, the court found that Punky's annual gross sales are $750,000, more than twice the amounts shown in the tax returns; this finding was based on Rotanak's testimony that in 2019 and 2020 Punky's had daily sales of $2,500 to $3,000, half in cash and half in credit card purchases, and an estimate by the court that Punky's is open 300 days a year. Although the court relied on Rotanak's testimony in developing the $750,000

gross income figure, it relied on Sokunthim's tax returns to determine Punky's expenses. From the $750,000 figure, the court subtracted $314,402, representing the average amount of expenses reported in Sokunthim's tax returns, yielding an annual income figure of $435,598—more than ten times the figures shown in the tax returns. The only way to reconcile the $435,598 figure with the tax returns is if Sokunthim failed to declare approximately $400,000 in income from Punky's in her annual tax returns.

[¶19] The court's finding that Punky's was open 300 days a year may be reasonable, but it is not supported in the evidence; none of the witnesses gave testimony on how many days per week or days per year the store was open. There was evidence supporting the court's findings that half of Punky's gross receipts were in the form of cash rather than credit card payments and that the parties retained an unquantified amount of cash rather than depositing it into a bank account. However, Rotanak's testimony about Punky's income did not support the court's findings regarding Sokunthim's income: his testimony was stale and speculative because he had no involvement in the business after early 2020 and had no specific knowledge of the nature or amount of Punky's receipts, cash or otherwise, after that. There was no testimony or other evidence that Sokunthim failed to declare any of Punky's cash receipts for tax

purposes or that Punky's gross sales and profits were not accurately reported on the tax returns, and the court made no such findings.

[¶20]  Because the court's finding as to Sokunthim's income is unsupported by the evidence and the court's award of child support is based on that erroneous finding, *see* 19-A M.R.S. § 2006(1) (2025), the court's child support award and underlying income determination must be vacated.  *See Whitmore v. Whitmore*, 2023 ME 3, ¶ 12, 288 A.3d 799.

**B.    Property Distribution**

[¶21]  Title 19-A M.R.S. § 953 (2020)[5] "establishes the three-step process that a court must use when disposing of property in a divorce judgment.  The court must (1) determine what of the parties' property is marital and non-marital, (2) set apart each spouse's non-marital property, and (3) divide the marital property between them in such proportion as the court deems just." *Miliano v. Miliano*, 2012 ME 100, ¶ 14, 50 A.3d 534 (citation and quotation marks omitted).

---

[5]  Title 19-A M.R.S. § 953 has since been amended.  *See* P.L. 2023, ch. 646, § C-3 (emergency, effective Apr. 22, 2024) (codified at 19-A M.R.S. § 953(1)(D) (2025)); P.L. 2021, ch. 122, § 3 (effective Oct. 18, 2021) (codified as subsequently amended at 19-A M.R.S. § 953(1)(D) (2025)).

### 1. Classification of Property as Marital

[¶22]  "In a divorce proceeding, the party claiming that a piece of property is nonmarital bears the burden of proof on that issue at trial.  When a party has the burden of proof at trial, we will reverse a ruling against that party only if the evidence compelled the court to find in that party's favor." *Findlen v. Findlen*, 1997 ME 130, ¶ 6, 695 A.2d 1216 (alteration, citation, and quotation marks omitted).  "We defer to the trial court's determination of witnesses' credibility and its resolution of conflicts in testimony." *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

[¶23] Property acquired during a marriage is statutorily presumed to be marital property.  19-A M.R.S. § 953(3).  "This statutory presumption is overcome if the party claiming the nonmarital status of the property demonstrates that the property is one of the exceptions set forth in 19-A M.R.S.[ ] § 953(2)." *Spooner v. Spooner*, 2004 ME 69, ¶ 8, 850 A.2d 354. "Property acquired by gift, bequest, devise or descent," 19-A M.R.S. § 953(2)(A), and "[p]roperty acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent," *id.* § 953(2)(B), is nonmarital.

[¶24] The Punky's store and the multi-unit rental property were owned by Punky's LLC and Panyah LLC respectively, and the marital home was in Sokunthim's name. Sokunthim contends that the trial court erred in finding that the two LLCs and the home were marital property. Because her Rule 52 motion for findings included a proposed finding that all three were acquired and funded primarily with nonmarital funds, we cannot infer findings that are not contained in the court's judgment.

[¶25] The court did not err in finding that both LLCs and the home were entirely marital because Sokunthim failed to overcome the presumption. All three properties were acquired during the marriage. Despite Sokunthim's contention that the gifts from her parents that enabled the acquisition of the three properties were to her only, the court found that "the money gifted by Mrs. Sokunthim's parents (whatever amount that might have been) was a gift to both parties and their new family and not just to Mrs. Sokunthim." These express findings were supported by Rotanak's testimony and other competent evidence in the record. The court did not err in determining that the parties' real properties were marital.

## 2. Disposition of Property

[¶26] Sokunthim argues that in dividing the parties' property the court abused its discretion by failing to (1) credit her allegations regarding economic misconduct by Rotanak during the marriage, (2) consider all relevant factors, and (3) distribute property in an equitable manner.[6]

[¶27] We review a trial court's distribution of marital property for an abuse of discretion. *Hutt v. Hanson*, 2016 ME 128, ¶ 15, 147 A.3d 352. "A just distribution is not synonymous with an equal distribution; the court is required to make the division fair and just considering all the circumstances." *Sears v. Sears*, 2023 ME 45, ¶ 20, 299 A.3d 15. The court must consider all relevant factors, including:

> **A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> **B.** The value of the property set apart to each spouse; and
>
> **C.** The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable periods to the spouse having custody of the children.

---

[6] Sokunthim further argues that the trial court abused its discretion in distributing the marital property because, she claims (as discussed above), some of the property was nonmarital. Because Sokunthim did not meet her burden of establishing that the property had a nonmarital component, we need not consider her additional arguments.

19-A M.R.S. § 953(1).[7]

[¶28]  The court made no findings as to Rotanak committing economic misconduct during the marriage.  At trial, Sokunthim alleged that Rotanak loaned a third party $15,000 from the Punky's LLC bank account without her consent and despite not being an authorized signer on the account.  However, Rotanak testified that Sokunthim consented to the loan and wrote the checks herself, that the money had been returned to the parties, and that Rotanak was authorized to sign for the account.  The court did not appear to find Sokunthim's allegations credible and made no findings related to the loan or economic misconduct on the part of either party.

[¶29]  The trial court considered the relevant factors, including the party's preferences, and divided the party's assets accordingly.  In distributing

---

[7] After the divorce complaint was filed but before the entry of judgment, 19-A M.R.S. § 953(1) was amended to add "economic abuse by a spouse" as a relevant factor for courts to consider in allocating property.  *See* P.L. 2021, ch. 122, § 3 (effective Oct. 18, 2021) (codified as subsequently amended at 19-A M.R.S. § 953(1)(D) (2025)).  The amendment incorporates the definition of "economic abuse" contained in the protection from abuse statute, 19-A M.R.S. § 4102(5) (2025).  *See* P.L. 2023, ch. 646, § C-3 (emergency, effective Apr. 22, 2024) (codified at 19-A M.R.S. § 953(1)(D) (2025)).  In enacting the amendment, the Legislature did not provide for it to apply to cases pending at the time of enactment.  *See* P.L. 2021, ch. 122, § 3 (effective Oct. 18, 2021) (codified as subsequently amended at 19-A M.R.S. § 953(1)(D) (2025)).  It therefore does not apply to this case.  *See* 1 M.R.S. § 302 (2025) ("Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."); *MacImage of Maine, LLC v. Androscoggin Cnty.*, 2012 ME 44, ¶ 22, 40 A.3d 975 ("The general rule of statutory construction set forth in section 302 may be overcome, however, by legislation expressly citing section 302, or explicitly stating an intent to apply a provision to pending proceedings." (alteration and quotation marks omitted)).  Moreover, Sokunthim does not argue that the amendment applies, so we do not consider it further.

the marital property, the court relied on the "significant amount of labor and time" that both parties invested in Punky's. The court also considered Rotanak's efforts "to keep their business afloat, all while caring for the children as best as he was able" throughout Sokunthim's illness. Notably, the court also declined to credit Sokunthim for her parents' support in the division of property.

[¶30]  Importantly, however, "the court must consider [the parties'] income in crafting an equitable distribution of the parties' assets and liabilities." *Sears*, 2023 ME 45, ¶ 23, 299 A.3d 15; *see* 19-A M.R.S. § 953(1)(C). Although the court's distribution of property appears reasonable, we must vacate it because the court's finding as to Sokunthim's income is unsupported by the evidence, and the court's distribution of property may have been influenced by that erroneous finding.

## C.    Denial of the Motion for New Trial

[¶31]  Sokunthim argues that the trial court abused its discretion by denying her motion for a new trial because "there were numerous and ongoing due process violations throughout the pendency of the case." Sokunthim specifically argues she was entitled to a new trial because the court failed to (1) act on her request for accommodations, (2) provide an interpreter at all

status conferences, and (3) provide adequate trial time. The first two grounds were not mentioned in Sokunthim's motion for new trial or otherwise raised in the trial court, so we review them under the obvious error standard.[8]

[¶32] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks omitted). "It is a flexible concept that 'calls for such procedural protections as the particular situation demands.'" *In re A.M.*, 2012 ME 118, ¶ 15, 55 A.3d 463 (quoting *Mathews*, 424 U.S. at 334).

### 1. Accommodations Request

[¶33] Sokunthim contends that she submitted a request for accommodation of a medical disability, in the form of a letter from her medical provider, and that the trial court never acted on her request.

[¶34] The Judicial Branch requires that accommodation requests be made on the Disability Accommodation Request Form to the Court Access Coordinator, the appropriate clerk's office, or the presiding judge in the case.

---

[8] To be preserved for appeal, "the issue must first be presented to the trial court so that the trial court has the opportunity to assess and act on the point to which the objection is directed." *In re Anthony R.*, 2010 ME 4, ¶ 8, 987 A.2d 532. "When an unpreserved error is asserted to implicate constitutional rights, the error may be regarded as 'obvious' if it worked a substantial injustice or affected the appellant's substantial rights." *Id.* ¶ 9. We review alleged but unpreserved constitutional violations for obvious error. *See, e.g.*, *In re Children of Destiny H.*, 2024 ME 66, ¶ 18, 322 A.3d 1183.

*See* State of Maine Judicial Branch, *Form OTH-011: Disability Accommodation Request Form*, https://www.courts.maine.gov/forms/pdf/misc/accommodation-request.pdf [https://perma.cc/68W6-W2W7]. Notably, the Judicial Branch requests that medical information not be attached to submitted forms. *Id.*

[¶35] The record reflects that on March 21, 2023, Sokunthim filed with the clerk a letter from her medical provider.[9] The letter was not filed using the Disability Accommodation Request Form. The letter indicated that Sokunthim "[h]as a past medical history of an intraventricular hemorrhage from an AVM which . . . has affected Sokunthim's memory and cognition" and requested that she "have time and space to answer any questions in court and provide interpretation services as needed." The record contains no indication that Sokunthim, despite being represented by counsel, ever asked for an accommodation during the trial. Because we will not assume that the court would have ignored either the letter or an oral request for accommodation if either had been brought to the court's attention, we deem the issue unpreserved and see no obvious error.

---

[9] The docket entry reads: "OTHER FILING – OTHER DOCUMENT FILED ON 03/21/2023 PLAINTIFF'S MEDICAL INFORMATION." The letter was dated October 22, 2020.

## 2.    Interpreter Issues

[¶36]    Sokunthim contends that, because two status conferences proceeded without interpreters, she was precluded from conducting any discovery because she has limited English proficiency (LEP).  The record does not indicate that she raised this issue in the trial court, so again our review is for obvious error.

[¶37]    An administrative order issued by the Maine Supreme Judicial Court provides that "Maine's State Courts will provide all LEP individuals who are parties or witnesses in any type of court case . . . with an interpreter in all court proceedings, at the State's expense."  Guidelines for Court-Appointed Interpretation and Translation Services, Me. Admin. Order JB-06-3 (as amended by A. 3-22) (effective Mar. 11, 2022).  There is no dispute that Sokunthim was entitled to have interpreter services at all court proceedings, including the status conferences, and that an interpreter was not provided at the May 2023 status conference that proceeded regardless.  The parties dispute—and the record is unclear—whether an interpreter was present at the February 2023 conference that proceeded.

[¶38]    Although Sokunthim claims to have been unable to propound discovery due to her lack of proficiency in English, the record contradicts her

contention in several ways. She was represented by attorneys at various times during the period when discovery could be pursued. Interpreters were present at other status conferences and other court events at which she could have made discovery requests. At a pretrial conference in August 2023 at which she was again unrepresented, Sokunthim requested leave to propound discovery, and her request was denied on the ground that she could have made the request earlier and that at various points in the case she had been represented by attorneys who also could have propounded discovery on her behalf. At a trial management conference in November 2023, Sokunthim was once again represented by counsel, and the court indicated that "[t]he parties are ready to proceed to trial" in December 2023. The trial transcript reflects that Sokunthim told the court that she did not need an interpreter to translate questions presented to her and would ask the interpreter for assistance as needed. As with her contention regarding accommodation, we see no obvious error.

### 3.    Reduced Trial Time

[¶39] Sokunthim contends that the court abused its discretion in denying her Rule 59 motion because the reduced trial time prejudiced her due process rights. "We review the denial of a motion for a new trial deferentially for a clear and manifest abuse of discretion.'" *In re Kaylianna C.*, 2017 ME 135, ¶ 8, 166

A.3d 976 (alteration and quotation marks omitted). "When due process is implicated, we review such procedural rulings to determine whether the process struck a balance between competing concerns that was fundamentally fair." *In re A.M.*, 2012 ME 118, ¶ 14, 55 A.3d 463 (quotation marks omitted).

[¶40] Due process fundamentally requires that "notice and opportunity for a hearing must be granted at a meaningful time and in a meaningful manner." *Bank of Am., N.A. v. Camire*, 2017 ME 20, ¶ 8, 155 A.3d 416 (quotation marks omitted). "Procedural due process requires an opportunity to be heard, not an optimal opportunity to be heard." *Id.* "The trial court has discretion to reasonably manage time during evidentiary hearings." *Id.* When a party "receive[s] ample notice of time constraints, appear[s] at trial, and ha[s] an opportunity to present his [case]," no due process violation occurs, especially when the party "fails to explain what evidence, if any, [the party] would have presented to the court with additional time." *Id.* ¶¶ 9-10.

[¶41] The trial court did not abuse its discretion in denying Sokunthim's motion for a new trial on the ground that the hearing was reduced from a two-day hearing to a one-and-a-half-day hearing. Sokunthim made no objection at the hearing as to reduced trial time, nor was there any indication that Sokunthim was unable to present evidence because of the time constraint.

Sokunthim's contention regarding trial time was first presented to the court in Sokunthim's motion for a new trial. As the court aptly noted in denying the Rule 59 motion, Sokunthim never objected to the length of the trial and did not explain what evidence she was unable to present.

[¶42] For all of these reasons, we conclude that the trial court did not abuse its discretion in denying Sokunthim's motion for a new trial.

## III. CONCLUSION

[¶43] Among the many issues Sokunthim raises in this appeal, we agree only with her objection to the court's finding as to her income because there was a lack of support for the finding in the evidence. Because the court's income finding may have affected the provisions of the judgment relating to child support and property distribution, we vacate those portions of the judgment and remand for further proceedings. In all other respects, we affirm the judgment.

The entry is:

> Judgment vacated as to the property distribution and child support. Judgment affirmed in all other respects. Remanded to the District Court for further proceedings consistent with this opinion.

Christa Vo, Esq., and Erika Connolly, Esq., Legal-Ease, LLC P.A., South Portland, for appellant Sokunthim Nou

Jeremy W. Dean, Esq., Portland, for appellee Rotanak Huot

Portland District Court docket number FM-2020-457
FOR CLERK REFERENCE ONLY