MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 45
Docket:        Ken-22-282
Submitted
  On Briefs:   February 22, 2023
Decided:       August 3, 2023

Panel:         MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

TORREY B. SEARS

v.

BOBBY J. SEARS

CONNORS, J.

[¶1]  Torrey B. Sears appeals from a judgment of the District Court (Waterville, *Rushlau, J.*) ordering his divorce from Bobby J. Sears, awarding Bobby[1] spousal support, distributing the parties' property and debt, and awarding Bobby attorney fees.  Torrey primarily argues that the court erred or abused its discretion in its financial rulings because it failed to conduct sufficient fact finding with respect to Torrey's income.  We vacate the court's award of spousal support, distribution of the parties' property and debt, and award of attorney fees but affirm the judgment in all other respects.

---

[1]  Because the parties share the same surname, we refer to them by their first names.

## I.  BACKGROUND

### A.      Factual Background

[¶2]  "The following facts, which are supported by the record, are drawn from the divorce judgment."  *Sullivan v. George*, 2018 ME 115, ¶ 2, 191 A.3d 1168.  Torrey and Bobby were married on August 16, 2000.  In late 2018, Torrey told Bobby that he wanted a divorce, and they have been living separately ever since.

[¶3]  During the marriage, Bobby primarily served as a homemaker, with responsibility for all aspects of the family household, while Torrey engaged in long-term, highly paid work.  Since the parties separated, Bobby has worked in offices.  She is currently a patient services representative at a doctor's office, and her projected annual income is $31,200.  There is an "enormous difference" in both the past earnings and earning potential between Torrey and Bobby.

[¶4]  Torrey graduated from college with a degree in engineering.  In 2001, he began working in the power industry and quickly progressed to a salaried management position.  Although he was well paid in his management role, he decided he would earn more working as a contractor instead of as an employee.  As such, Torrey has primarily been working as a contractor or

subcontractor through his LLC. His annual income appears to have ranged from $123,335 to $319,813 in the years 2007 to 2018.

[¶5] In early 2019, Torrey suffered a cardiac event and was hospitalized. He now has a cardiac device implanted in his body. This device is sensitive to electromagnetic forces, so he is precluded from working inside power plants. Torrey claims that his annual compensation has declined significantly because of this limitation.

[¶6] Throughout the marriage, Torrey controlled most aspects of the parties' finances. He also took responsibility for paying their taxes. In 2015, he stopped using a tax preparation service and having Bobby write checks for their estimated income taxes. Thus, from 2015–2018, which were some of Torrey's highest-earning years, the parties did not file any tax returns. As a result, they have a tax debt potentially amounting to hundreds of thousands of dollars. The exact amount that will need to be paid is unclear.

[¶7] Torrey and Bobby also have significant debt in other respects, including, among other things, credit card debt and various loans. It is not clear how they accumulated so much debt when Torrey was earning a significant amount of money on which he has not been paying taxes. What is clear,

4

however, as the court found, is that "Bobby is not responsible for amassing these debts. Torrey accomplished that on his own."

[¶8] Torrey and Bobby do not appear to jointly own any significant assets. They own several vehicles. Torrey is a cotenant with relatives on four parcels of real estate, one of which was the marital home, but the parties agree that his interests in all parcels are nonmarital property. Bobby has been living in the marital home during the pendency of this case. She knows that she will have to move after the divorce and estimates that a suitable one or two-bedroom apartment will cost her $1,100 per month. Bobby will have a significant gap between her income and expenses.

[¶9] Torrey is currently sharing a residence with a partner in North Carolina. His income will vary depending on his success in obtaining engineering projects. He has shown that he can be profitably employed in his field notwithstanding his health issues. Torrey can pay substantial spousal support to Bobby, although, as the court found, "not in the amount requested by Bobby."

## B. Procedural History

[¶10] In May 2019, Torrey filed a complaint for divorce on the ground of irreconcilable differences. A final hearing was held in April 2021. The court

heard testimony from Torrey and Bobby and admitted numerous exhibits in evidence by agreement of the parties. By written judgment, which was entered on March 4, 2022, the court granted Torrey's complaint for divorce.

[¶11] The court ordered Torrey to pay Bobby general spousal support of $2,000 per month for 114 months and to maintain a life insurance policy for Bobby's benefit for $250,000 during this period.[2] The court based its award on its findings that (1) the parties were married for nearly nineteen years; (2) Torrey has significantly higher earning potential; (3) Bobby had the important but unpaid role of homemaker while Torrey had consistent and highly paid work during the marriage; (4) Bobby has no pension, retirement, personal property, or real property that could support her; and (5) Torrey has debt but also real property assets and substantial earning potential for years to come.

[¶12] Critically, the court did not make an express finding, e.g., either a specific amount or even a range, identifying Torrey's current or projected income.

[¶13] The court also classified and distributed the parties' real and personal property, tangible and intangible, and debt. The court ordered that

---

[2] The life insurance coverage may be reduced by $50,000 every two years in which Torrey has paid the amount of spousal support required.

6

Torrey be solely responsible for their tax liability for the years 2015–2020. Finally, the court ordered Torrey to pay $6,000 toward Bobby's attorney fees.

[¶14] Torrey timely filed a motion for amended or additional findings pursuant to M.R. Civ. P. 52(b) and a motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e). He requested that the court "find additional facts and conclusions of law relating to its order regarding spousal support and marital property division and to alter or amend its spousal support award and property division order as appropriate," proposed fifteen findings, and requested four amendments to the judgment. The court denied the motions in August 2022, and Torrey timely appealed. 14 M.R.S. § 1901(1) (2023); M.R. App. P. 2B(c)(2).

## II. DISCUSSION

[¶15] Torrey challenges the court's financial determinations. The crux of his argument is that the court erred or abused its discretion in its determinations because it failed to make a factual finding regarding his current income or income potential, a finding foundational to any financial award. In a nutshell, although the rulings of the court appear reasonable on this record, because the court failed to make a finding regarding Torrey's income, we are unable to meaningfully review most of the court's financial rulings and remand

for the court to make a finding regarding Torrey's income and to then re-examine its rulings. Each financial determination will be discussed in turn.

## A. Spousal Support

[¶16] We review findings upon which a spousal support award is based for clear error and a divorce court's decision regarding spousal support for an abuse of discretion. *Viola v. Viola*, 2015 ME 6, ¶ 7, 109 A.3d 634. Ordinarily, we "assume that a trial court found all of the facts necessary to support its judgment." *Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101. When, however, "a motion for findings has been timely filed and denied, we cannot infer findings from the evidence in the record." *Id.* (alteration and quotation marks omitted). "[I]f the judgment does not include specific findings that are sufficient to support the result, appellate review is impossible . . . ." *Id.*

[¶17] Any order granting spousal support must state (1) the type or types of support awarded, (2) the method of payment and any term limitations, (3) whether the support is subject to future modification, and (4) the factors relied upon by the court in arriving at its decision if the proceeding was contested. 19-A M.R.S. § 951-A(1) (2023). These factors are set forth in 19-A M.R.S. § 951-A(5). "In determining an award of spousal support, the trial court must consider all of the statutory factors, but may rely on some factors to

8

the exclusion of others." *Jandreau v. LaChance*, 2015 ME 66, ¶ 16, 116 A.3d 1273.

[¶18] Because the court denied Torrey's motion for findings regarding his income, we cannot assume that the court implicitly found facts necessary to support its determination. Here, the court made the following findings relevant to the spousal support determination: the findings described above, *see supra* ¶ 11; that Torrey annually earned between $123,335 and $319,813 from 2007 to 2018; that Torrey's future income "will vary depending on his success" in finding engineering projects; and that Torrey "has shown that he can be profitably employed in his field, notwithstanding his health issues."

[¶19] The court did not, however, make an express finding regarding Torrey's current or projected income for purposes of the spousal support award.[3] Although the general findings it did make about Torrey's financial future are useful, we are unable to determine how the court arrived at the figure of $2,000 per month. *See Dube v. Dube*, 2016 ME 15, ¶ 12, 131 A.3d 381. A court need not assign a specific dollar figure to a party's current or projected income

---

[3] The court noted that "Torrey testified that based on his first quarter earnings his annual compensation from engineering work in 2021 would be approximately $88,000." The record includes other evidence regarding his future income, e.g., Torrey testified that he should make $110,000 in a twelve-month period. But the court never actually made a finding as to what it deemed his income would be.

in making a spousal support award; a range may suffice. The key is to provide sufficient findings as to what the court considers a party's income to be in order to effectively inform the parties, and us on appeal, of the rationale behind the court's award. *See Ehret*, 2016 ME 43, ¶ 17, 135 A.3d 101; *Payne v. Payne*, 2006 ME 73, ¶ 9, 899 A.2d 793. We must therefore vacate the spousal support award.[4]

## B. Property Distribution

[¶20] We review the divorce court's distribution of marital property for an abuse of discretion. *Hutt v. Hanson*, 2016 ME 128, ¶ 15, 147 A.3d 352. The statute governing the disposition of property at divorce directs the court to "set apart to each spouse the spouse's property" and to "divide the marital property in proportions the court considers just." 19-A M.R.S. § 953(1) (2023). A just distribution is not synonymous with an equal distribution; the court is required to make the division fair and just considering all the circumstances. *Hutt*, 2016

---

[4] Torrey also argues that the court erred or abused its discretion in ordering him to maintain a life insurance policy in Bobby's name to secure the spousal support obligation because it failed to make sufficient factual findings. Because we are vacating the spousal support portion of the divorce judgment, we do not reach this argument. On remand, should the court determine that a similar spousal award is appropriate, it should consider making findings regarding any relevant issues generated. *See Bryant v. Bryant*, 411 A.2d 391-92, 395 (Me. 1980) (holding that the trial court abused its discretion in ordering the obligor to obtain life insurance because the "justice did not have before him evidence of either the availability or cost of such insurance and so could not have given regard to the husband's ability to obtain and pay for it"); *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 58, 956 A.2d 110 (explaining that, "[g]iven [the obligor's] substantial income and assets, and absent any evidence that [the obligor] has any health problems or other limitations, the court did not err in finding that he could obtain life insurance that he can afford").

ME 128, ¶ 10, 147 A.3d 352. To make this determination, the divorce court must consider all relevant factors, including

> **A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> **B.** The value of the property set apart to each spouse;
>
> **C.** The economic circumstances of each spouse at the time the division of property is to become effective . . . ; and
>
> **D.** Economic abuse by a spouse . . . .

19-A M.R.S. § 953(1). "Marital debt is apportioned pursuant to the same considerations as the division of marital property." Levy, *Maine Family Law* § 7.7[1] at 7-50 (8th ed. 2013).

[¶21] Generally, the "divorce court is required to assign specific values to all marital property in order to make the resulting distribution more comprehensible to the litigants and to facilitate appellate review." *Id.* § 7.8[1] at 7-64. "Proof of the value of nonmarital property set apart to each spouse is also required by subsection 953(2)(B) as a consideration in arriving at a just division of the marital property." *Id.* We have, however, acknowledged that there may be circumstances where it is "impracticable and nearly impossible for the divorce court to make a specific finding as to the value and location of

each chattel with which the court is dealing." *Cushman v. Cushman*, 495 A.2d 330, 335 (Me. 1985).

[¶22]  Because Torrey's motion for further findings was denied, we cannot assume that the court implicitly found the facts necessary for its award. The marital property and debt at issue here includes, among other things, certain items of personal property, credit card debt, and the tax liability for the years 2015–2020.  It also includes four parcels of nonmarital real estate.  There are no findings regarding the values of the property and debt at issue, and this is not a situation where it would be impracticable for the court to make such findings because the record contains evidence of their values.  *See* Levy, *Maine Family Law* § 7.8[1] at 7-64 n.325; 19-A M.R.S. § 953(1)(B).

[¶23]  Moreover, the court must consider Torrey's income in crafting an equitable distribution of the parties' assets and liabilities.  *See* 19-A M.R.S. § 953(1)(C); *Ehret*, 2016 ME 43, ¶ 18, 135 A.3d 101.  Without findings illuminating the value of the parties' property and debt and Torrey's current income or income potential, we cannot effectively review whether the distribution was equitable, despite how reasonable it appears on its face.  We

12

therefore vacate the portion of the judgment distributing the parties' property and debt.[5]

## C. Attorney Fees

[¶24] Finally, Torrey asserts that the court abused its discretion in ordering him to pay $6,000 toward Bobby's attorney fees. We review for an abuse of discretion the divorce court's determination whether to award attorney fees. *See Nadeau v. Nadeau*, 2008 ME 147, ¶ 59, 957 A.2d 108; *see also* 19-A M.R.S. § 105 (2023). Such an award should be "based on the parties' relative financial ability to pay the costs of litigation as long as the award is ultimately fair under the totality of the circumstances," and the court "may consider all relevant factors that serve to create an award that is fair and just." *Neri v. Heilig*, 2017 ME 146, ¶ 16, 166 A.3d 1020 (quotation marks omitted). "The court must provide a concise but clear explanation of its reasons for grant or denial of the fee award." *Id.* (quotation marks omitted).

---

[5] Torrey also asserts that the court erred as a matter of law in allocating the entire tax debt to him. Given our holding, we do not reach this argument.

On remand, we encourage the court to include a table in its judgment demonstrating its overall distribution of the parties' property. *See Bond v. Bond*, 2011 ME 54, ¶ 19, 17 A.3d 1219. "Such a table is valuable to the parties and facilitates appellate review because it demonstrates that the court considered the overall allocation of property and debts, and understands the ultimate effect of the divorce judgment." *Id*.

[¶25] Because we vacate the portions of the judgment awarding spousal support and distributing the parties' property and debt, we also vacate the court's grant of attorney fees to Bobby. The court should have a clear financial picture when determining the relative ability of the parties to absorb the costs of litigation. Although we are vacating the award, we note that, based on the record evidence, this award appears reasonable. On remand, the court must consider whether its income and property distribution determinations have any bearing on the parties' relative financial positions and whether a different award of attorney fees may be warranted. *McLean v. Robertson*, 2020 ME 15, ¶ 19, 225 A.3d 410; *see Whitmore v. Whitmore*, 2023 ME 3, ¶ 13, 288 A.3d 799.

## III. CONCLUSION

[¶26] For the reasons stated above, we vacate the portions of the divorce judgment awarding spousal support, distributing property and debt, and awarding attorney fees. We recognize that it can be difficult at times for the court to determine a party's current or projected income and the value of the property and debt at issue. The key is not necessarily to pinpoint a specific figure; a range may suffice. The requirement is that the court's income and valuation findings provide a sufficient predicate to assess the specific awards. On remand, the court may reopen the record to take in new evidence. In doing

so, the court may very well use its discretion to craft an award similar to this one but should ensure that it makes the findings necessary to support all aspects of its judgment.

The entry is:

> Judgment vacated with respect to the court's spousal support award, distribution of the parties' property and debt, and attorney fees award. Judgment affirmed in all other respects. Remanded for further proceedings consistent with this opinion.

---

Joe Lewis, Esq., Port City Legal, Portland, for appellant Torrey B. Sears

Thomas J. Nale Jr., Esq., Nale and Nale Law Offices, LLC, Waterville, for appellee Bobby J. Sears

Waterville District Court docket number FM-2019-120
FOR CLERK REFERENCE ONLY