MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 62
Docket:      Som-24-178
Submitted
  On Briefs:  March 18, 2025
Decided:     July 10, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.

## PAMELA J. (TOWER) WEINLE

v.

## ESTATE OF ALAN R. TOWER

LAWRENCE, J.

[¶1]  Pamela J. (Tower) Weinle appeals from a divorce judgment entered in the District Court (Skowhegan, *Bristol, J.*) dividing the parties' marital property and awarding Alan R. Tower $2,000 per month in general spousal support, $500 per month in reimbursement spousal support, and $12,325 in attorney fees.  On appeal, Weinle contends that the court erred in its (1) award of spousal support, (2) distribution of property, and (3) award of attorney fees.  Tower died after the entry of judgment and after Weinle had appealed.  In reaching the merits of this appeal, we overrule our previous holding in *Panter v. Panter* requiring us to dismiss the appeal because of Tower's death during the pendency of the appeal.  *See* 499 A.2d 1233, 1233 (Me. 1985).  Because we discern no error in the court's judgment, we affirm.

## I. BACKGROUND

[¶2] The following facts are drawn from the procedural record and the court's findings of fact, which are supported by competent evidence in the record. *McKenna v. Pray*, 2024 ME 58, ¶ 3, 320 A.3d 415.

[¶3] When the parties met, Weinle had three minor children from her previous marriage. Tower owned land and a cabin in Harmony and Weinle lived in a different home at the time. The parties decided to expand and renovate the Harmony property, and Tower moved into Weinle's home during this process. The parties completed the renovation, moved into the Harmony property in May 1998, and were married five months later. The Harmony property was eventually held by the parties as joint tenants. In 2018, without Tower's knowledge, Weinle converted the joint tenancy in the Harmony property to a tenancy in common by transferring her interest to her daughter, who then transferred it back to Weinle.

[¶4] Weinle was the primary breadwinner throughout the marriage and took on the primary financial obligations of the parties. She worked various jobs and often held more than one job at a time. She has been involved in two business ventures: (1) her firearm business, which is valued at $2,500; and (2) Northwoods Canoe Company, LLC, in which she has a partnership interest.

She obtained a nursing degree during the marriage and became a registered nurse in 2013. She has worked as a hospice nurse for the past eight years.

[¶5] Weinle did not accurately report her gross income and expenses on her financial statements that she filed with the court. She has consistently earned an average income of over $100,000 per year for the past nine years. At the time of hearing, Weinle intended to work for at least the next two years and expected to begin receiving $2,095 per month in social security income in March or April 2024. Weinle expected to have a monthly gross income of $11,409.75 once she began receiving social security.

[¶6] At the time of the hearing, Weinle also had a health savings account with a substantial balance and a Roth IRA with a balance of approximately $5,000, to which she contributes $100 per month.

[¶7] As of the time of the hearing, Tower had not worked in over five years and received $1,284 per month in social security and $23 per month in food stamps. He utilized a clothing bank and food bank and used a community agency for transportation to the hospital for dialysis three times per week. Tower also was in poor health and lacked the ability to absorb litigation costs resulting from this divorce action.

4

[¶8]  Tower left Maine for Florida in 2019, and the parties lived apart from that point on.  Tower and his brother purchased an older mobile home for $3,000 that sits on a rented lot in Florida.  It has suffered hurricane damage and has no value.

[¶9]  Weinle filed a complaint for divorce in July 2019 and the court issued the preliminary injunction mandated by 19-A M.R.S. § 903 (2018),[1] ordering that the parties were enjoined from

> sell[ing], transfer[ing], giv[ing] away, encumber[ing], conceal[ing], or dispos[ing] of any property owned individually or jointly by the parties, unless it is done (a) with the written consent of both parties, (b) to purchase the necessities of life, (c) in the usual course of a business owned by either party, or (d) with the permission of the court.

[¶10]  In March 2020, the court (*Benson, J.*) issued an interim order in a separate court proceeding granting Weinle exclusive possession of the Harmony property and making her solely responsible for the expenses related to the property while the order was in effect.

[¶11]  In April or May 2021, Weinle, in violation of the preliminary injunction, purchased a home in Dover-Foxcroft for $155,000.  She withdrew

---

[1]  Section 903 has been amended since then, though the amendments are not relevant in the present case.  *See, e.g.*, P.L. 2023, ch. 204, § 2 (effective Oct. 25, 2023) (codified at 19-A M.R.S. § 903 (2025)).

$5,000 from her Roth IRA for the down payment, which was also a violation of the preliminary injunction. The Dover-Foxcroft home has two units; Weinle resides in one and rents out the other for $850 per month. Weinle took out loans to make repairs on this home and replace the furnace; the outstanding loan balances total $19,600. The Dover-Foxcroft home has a value of $219,300, with an unknown mortgage debt because Weinle has not disclosed the extent of any mortgage debt on the property.

[¶12] After Weinle purchased the Dover-Foxcroft home, she rented the Harmony property to tenants for eight months at $600 per month. Weinle failed to pay property taxes on the Harmony property in 2020, 2021, and 2022, resulting in tax liens totaling $3,023.93. There is a federal tax lien of $20,740.06 on Weinle's property because she unilaterally decided to file her federal tax returns as "married filing separately" beginning in 2018; Tower did not file tax returns during those years.

[¶13] Weinle further violated the preliminary injunction by purchasing and selling multiple vehicles. In total, Weinle accrued over $180,000 in debt by purchasing a 2021 Dodge Ram truck and the Dover-Foxcroft home while the preliminary injunction was in effect, constituting economic misconduct. Additionally, she sold two motor vehicles for $15,000 below fair market value

without conferring with Tower or the court. On his side of the ledger, Tower purchased a vehicle for $600 in September 2022 without consulting Weinle.

[¶14] In July 2022, the court (*Nale, J.*) issued a pretrial order addressing Weinle's failure to comply with discovery requirements. The order required that discovery be completed within the next ten days, or a sanction of $750 would be issued against Weinle. In January 2023, the court (*Benson, J.*) issued an interim order addressing pending motions before the court: Tower's motion to amend the interim order granting the Harmony property to Weinle, Tower's request for discovery sanctions, and Weinle's motions for failure to comply, for contempt, and to compel in regard to discovery that Weinle claimed she had sought from Tower.

[¶15] The court imposed a sanction of $750 on Weinle, finding that Weinle "herself admitted she had not complied with the discovery requests and had no intention of doing so unless she could get further documents from [Tower]." The order required Weinle to produce discovery within thirty days or "further sanctions [would] be issued that may include, but not be limited to, further monetary sanctions and the restriction on [Weinle's ability] to offer evidence at trial." The court denied Weinle's motions for failure to comply, contempt, and to compel, "as moot, untimely and improperly before the court."

[¶16] Finally, the order granted exclusive possession of the Harmony property to Tower but required Weinle to maintain the property and pay its operating costs until March 1, 2023, when the order would take effect. Weinle was permitted to remove her personal effects when she vacated the property, but the order directed her to not remove any other personal property from the house. Despite that order, Weinle removed $5,000 worth of property that was not hers to remove from the home. Weinle also failed to ensure that the house would be adequately heated, and as a result the water heater broke, the pipes froze, and the toilet cracked.

[¶17] Tower began living in the Harmony property and undertook some of the needed repairs but was unable to afford a new water heater and remained without hot water. The home was still in significant disrepair and lacked a septic system. The fair market value of the Harmony property is $50,000, and there is no mortgage on the property.

[¶18] In June 2023, the court again issued an order related to discovery disputes between the parties. The court, responding to Tower's motion for further discovery sanctions and Weinle's concern that Tower had not filed a financial statement with the court, ordered that (1) Tower must file his financial statement within ten days; (2) the releases provided to Tower by

Weinle to access financial information were an adequate means for Tower to get the information he was seeking from Weinle, but that Tower's counsel must maintain an accounting of time and expenses necessary to obtain the relevant records and that the accounting would be considered in the equitable division of assets; and (3) the court "shall retain the authority to disallow any evidence from either side which has not been properly provided to the opposing party."

[¶19]  The court (*Bristol, J.*) held a final hearing on January 9, 2024.  The court heard testimony from both parties, admitted various exhibits in evidence, and took judicial notice of the interim orders.  A divorce judgment was entered on March 29, 2024, and the court subsequently ordered Weinle to pay $12,325 in attorney fees to Tower, after his counsel filed an attorney fees affidavit with the court.  Weinle timely appealed to this Court.  *See* M.R. App. P. 2B(c)(1).

[¶20]  Tower died on August 21, 2024, after the notice of appeal had been filed.  Tower's counsel filed a suggestion of death and a motion to substitute the Estate of Tower for Tower, which we granted.  We invited amici briefs, in addition to requesting supplemental briefing from the parties, on the effect of Tower's death during the pendency of the appeal.

## II.  DISCUSSION

### A.    Effect of Tower's Death During Pendency of Appeal

[¶21]  We have held that when a party dies during the pendency of a divorce appeal, the entire action abates.  *Panter*, 499 A.2d at 1233.  The Estate of Tower, however, contends that we should reconsider our jurisprudence in light of the modern trend that an underlying divorce action is not abated as to property rights by the death of a party during the pendency of an appeal.

#### 1.      The *Panter* Decision

[¶22]   The *Panter* Court reasoned that because an appeal stays the judgment of divorce, *see* M.R. Civ. P. 62(e), a party's death renders "the judgment of divorce—and of course, the division of marital property" moot.  *Panter*, 499 A.2d at 1233 (footnote omitted).  Specifically, "[t]he power of the court to determine property rights is dependent upon the granting of a divorce to one of the parties," which, the *Panter* court said, can no longer happen when one party has died.  *Id.*  The opinion cites an American Law Reports annotation for the proposition that a party's death during the pendency of the appeal renders the judgment moot.  *Id.* at 1233 & n.1.

[¶23]  Since *Panter*, however, the annotation has been updated to reflect the modern view that the action does not abate regarding property rights.  *See*

Francis M. Dougherty, Annotation, *Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal*, 33 A.L.R. 4th 47, § 2[b] (1984), Westlaw (database updated 2024); *see also Death and Equitable Distribution*, 15 No. 2 Equitable Distrib. J. 13, 17 (1998) ("Most case law holds that the death of a spouse during the pendency of an appeal does not cause the action to abate."). In applying this approach, courts have generally reasoned that the heirs or personal representative of a deceased party have an interest sufficient to make the cause of action survive as to property interests determined by the divorce judgment. *See* Francis M. Dougherty, Annotation, *Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal*, 33 A.L.R. 4th 47, § 2[b]; *see, e.g., Nickerson v. Nickerson*, 48 P. 423, 423-24 (Or. 1897); *Hazen v. Hazen*, 451 A.2d 398, 399 (N.H. 1982); *see also Bell v. Bell*, 181 U.S. 175, 178-79 (1901).

## 2. Stare Decisis Considerations

[¶24] Although we find the reasoning behind the modern approach persuasive, we must weigh this against the "court-made policy" of stare decisis. *Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 40, 307 A.3d 1049; *see McGarvey v. Whittredge*, 2011 ME 97, ¶ 63, 28 A.3d 620 (Levy, J., concurring) ("Even when we have a certain 'unease' with the analysis of a prior decision, we do not

overrule the decision without a compelling and sound justification."). The factors that we consider in determining whether to overrule a precedent include (1) whether the precedent is an anomaly nationally, (2) whether the precedent's rule is unworkable, (3) whether overruling the precedent is unlikely to upset settled expectations of parties, (4) whether overruling the precedent will advance sound public policy, and (5) whether overruling the precedent will maintain stability and consistency in the law. *Finch*, 2024 ME 2, ¶¶ 41-47, 307 A.3d 1049.

[¶25] We ultimately conclude that the considerations that favor overturning *Panter* outweigh the considerations of stare decisis, in part because four of the five factors favor overturning *Panter*. First, Maine is an anomaly because the *Panter* holding places Maine in the minority of jurisdictions. *See Death and Equitable Distribution*, 15 No. 2 Equitable Distrib. J. 13, 17 (1998). Second, the *Panter* holding—requiring dismissal of a divorce action when a party dies during the pendency of an appeal after a final judgment—is unworkable. *See Panter*, 499 A.2d at 1233. *Panter* reasons that its holding is mandated by the stay of judgment upon appeal pursuant to M.R. Civ. P. 62(e). *Panter*, 499 A.2d at 1233. However, as we noted in *Estate of Banks v. Banks*, a judgment is final upon signature by the court, 2009 ME 34, ¶ 9, 968

A.2d 525, and a stay of the enforcement of a divorce judgment during an appeal does not affect the judgment's finality or inherently require dismissal of the entire action upon a party's death, *see* M.R. Civ. P. 62(e). Thus, when a final divorce judgment is appealed to address issues concerning property interests, the untimely death of one party does not mandate dismissal of the entire action. Put differently, a stay of the enforcement of the divorce judgment does not prevent this Court from continuing to the merits of an appeal as to property interests decided by the final divorce judgment.

[¶26] Third, overturning *Panter* will not "upset settled expectations" because parties are likely basing their expectations on the divorce judgment and merits of the appeal rather than the untimely death of a party during the pendency of an appeal. Fourth, the modern approach promotes sound public policy because rather than dismissing actions for divorce when a final judgment has already been entered in the District Court, this approach provides for the enforcement of final judgments via siloed appellate review.

[¶27] Consistency is the sole factor that lies in favor of upholding *Panter*. But here, the goal of consistency alone is not enough to continue an approach that should reasonably change. *See Dyer v. Me. Drilling & Blasting, Inc.*, 2009 ME 126, ¶ 28, 984 A.2d 210 ("Although we afford great weight to the value of

precedent under the doctrine of stare decisis, precedents, once so established, do not become totally immune from change for all time. Were that to be so[,] the law would be locked rigidly to the decisions of the past, rendered powerless to adapt to the needs and values of the present." (alterations and quotation marks omitted)).

[¶28] Therefore, we now overrule *Panter* and hold that the death of a party during the pendency of an appeal from a divorce judgment does not moot the appeal as to the parties' property rights.[2] Therefore, Weinle's appeal may thereby proceed as to the disposition of property, spousal support, and attorney fees.

## B. Spousal Support

[¶29] Weinle challenges the award of general and reimbursement spousal support, contending that the award will "cripple" her because the court erred in its determination of her income. She further argues that the court erred in finding that she engaged in economic misconduct and in imposing a

---

[2] The death of a party during an appeal from a divorce judgment would, however, likely moot the appeal as to other issues. For example, any issue as to parental rights and responsibilities would likely be mooted because when one parent dies, "all parental rights respecting the child devolve upon the other parent." 19-A M.R.S. § 1502 (2025).

spousal support award that will "require [her] to continue working until 71 years of age."

[¶30]  "We review findings upon which a spousal support award is based for clear error and a divorce court's decision regarding spousal support for an abuse of discretion."  *Sears v. Sears*, 2023 ME 45, ¶ 16, 299 A.3d 15.  Because there was no motion for additional findings, *see* M.R. Civ. P. 52(b), "we assume that [the] trial court found all of the facts necessary to support its judgment."  *Sears*, 2023 ME 45, ¶ 16, 299 A.3d 15 (quotation marks omitted).

[¶31]  "Any order granting spousal support must state (1) the type or types of support awarded, (2) the method of payment and any term limitations, (3) whether the support is subject to future modification, and (4) the factors relied upon by the court in arriving at its decision if the proceeding was contested."  *Id.* ¶ 17; *see* 19-A M.R.S. § 951-A(1) (2025).  The Legislature codified factors for courts to consider, including "[t]he income history and income potential of each party."  19-A M.R.S. § 951-A(5)(E).

[¶32]  After considering the statutory factors, the court ordered Weinle to pay Tower $2,000 per month of general spousal support, continuing for a minimum of forty-eight months.  The court also imposed reimbursement spousal support of $500 per month to Tower for twenty-four months and

required Weinle to maintain a life insurance policy on her life and to name Tower as the sole beneficiary throughout the duration of her spousal support obligations. The court ordered that the "spousal support award is subject to modification when there is a substantial change in financial circumstances and it appears that justice requires, except that no modification as to amount shall be sought within the first 4 years of the general support obligation, and none at any point during the reimbursement support term, given the circumstances of this case and the age of the parties."[3]

[¶33] Despite Weinle's contentions, the court's findings are supported by the record. Regarding Weinle's economic misconduct, the record supports that she sold two motor vehicles for $15,000 less than fair market value and that she failed to comply with discovery obligations throughout the divorce proceedings, which increased the time and cost of litigation. Regarding Weinle's income, the court found, with support in the record, that her average annual gross income has been over $100,000 for the past nine years and that she is expected to have a monthly gross income of $11,409.75 in the future. The

---

[3] We note that the court erred in imposing an anti-modification clause as to both types of spousal support. Awards of spousal support issued on or after October 1, 2013, are "subject to modification when there is a substantial change in financial circumstances and it appears that justice requires," unlike awards issued prior to that date, in which an anti-modification clause is controlling. 19-A M.R.S. § 951-A(4) (2025). Because Weinle's spousal support obligation ceased upon Tower's death, *see infra* ¶ 34, we determine that this error is harmless.

record also supports the court's finding that Weinle has a substantial balance in her health savings account.

[¶34] We therefore affirm the court's award of general and reimbursement spousal support. We note, however, that because the divorce judgment did not specify that the spousal support award survived the death of either party, Weinle's obligation ceased upon Tower's death. *See* 19-A M.R.S. § 951-A(8) ("An order awarding, denying or modifying spousal support may provide that the award survives the death of the payee or payor, or both. Unless otherwise stated in the order awarding spousal support, the obligation to make any payment pursuant to this section ceases upon the death of either the payee or the payor with respect to any payment not yet due and owing as of the death.")

## C.    Property Distribution

[¶35] Title 19-A M.R.S. § 953 (2018)[4] "establishes the three-step process that a court must use when disposing of property in a divorce judgment. The court must (1) determine what of the parties' property is marital and

---

[4] Title 19-A M.R.S. § 953 has since been amended, though the amendments are not relevant on appeal. *See, e.g.*, P.L. 2023, ch. 646, § C-3 (emergency, effective Apr. 22, 2024) (codified at 19-A M.R.S. § 953(1)(D) (2025)); P.L. 2021, ch. 122, § 3 (effective Oct. 18, 2021) (codified as subsequently amended at 19-A M.R.S. § 953(1)(D) (2025)).

non-marital, (2) set apart each spouse's non-marital property, and (3) divide the marital property between them in such proportion as the court deems just." *Miliano v. Miliano*, 2012 ME 100, ¶ 14, 50 A.3d 534 (citation and quotation marks omitted). "Generally, the divorce court is required to assign specific values to all marital property in order to make the resulting distribution more comprehensible to the litigants and to facilitate appellate review." *Sears*, 2023 ME 45, ¶ 21, 299 A.3d 15.

[¶36] "The divorce court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Bayley v. Bayley*, 602 A.2d 1152, 1153-54 (Me. 1992). As here, however, "[i]n the absence of a motion for specific factual findings, we ordinarily assume that a trial court found all of the facts necessary to support its judgment." *Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101. Further, "[w]e defer to the trial court's determination of witnesses' credibility and its resolution of conflicts in testimony." *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

### 1. Valuation of Dover-Foxcroft Home

[¶37] Weinle argues that the court erred in its valuation of the Dover-Foxcroft home, contending that the court improperly credited Tower's testimony as to the value of the property.

[¶38] At trial, Tower testified that the house has a "fair value" of at least $219,300. Tower then moved to enter an exhibit in evidence as the basis for his opinion; the first two pages of the exhibit contained "Trulia Estimates" of the property value, and the remaining pages contained the property record card. The court admitted the property card but excluded the Trulia Estimates as hearsay. The court noted, however, "that the information was already testified about from the first two pages anyway . . . and that wasn't objected to."

[¶39] Conversely, Weinle claimed in her financial statements that the home is worth $120,000. Weinle did not testify as to the value at the hearing, but did testify to repairs she has made to the home since purchasing it, including renovating two bathrooms in the house and replacing the furnace and water heater.

[¶40] We review the court's determination of a property's value for clear error. *Bolduc v. Bolduc*, 2023 ME 54, ¶ 8, 301 A.3d 771. "A finding is clearly erroneous if it is unsupported by competent evidence in the record." *Id.*

[¶41]  Weinle purchased the Dover-Foxcroft home during the pendency of the divorce.  Pursuant to 19-A M.R.S. § 953(3), "[a]ll property acquired by either spouse subsequent to the marriage and prior to the decree of legal separation is presumed to be marital property regardless of whether title is held individually."

[¶42]   In accordance with the court's second discovery order, Tower obtained documentation as to the value of the Dover-Foxcroft home as marital property.  As noted, Weinle did not object to Tower's testimony on the value of the Dover-Foxcroft home.  Weinle did not expressly testify about the home's fair market value.  Weinle also did not file a motion for further findings of fact following the entry of the divorce judgment.  The court therefore was free to evaluate the credibility of both parties' testimony and the documentary evidence that they provided; its valuation of $219,300 is supported by the record. *See Wandishin v. Wandishin*, 2009 ME 73, ¶ 13, 976 A.2d 949.

## 2.    Distribution of Property

[¶43] Weinle contends that the court erred in its distribution of property for a variety of reasons, including that she should have been awarded interests in her Roth IRA account and the Harmony property, as well as "a division of equity from the home due to providing 20 years of upkeep and remodeling."

[¶44]   We review the distribution of marital property for an abuse of discretion.  *Sears*, 2023 ME 45, ¶ 20, 299 A.3d 15.  "A just distribution is not synonymous with an equal distribution; the court is required to make the division fair and just considering all the circumstances."  *Id.*  In making this determination, the court must consider all relevant factors, including those codified in 19-A M.R.S. § 953(1).

[¶45]   In distributing the marital property, the court considered its factual findings and the factors codified in 19-A M.R.S. § 953(1).  In particular, the court noted that Tower had no earning capacity and little income, whereas Weinle consistently earned over $100,000 per year and diminished the value of the marital estate throughout the pendency of the divorce action.  Although the distribution was not equal between the parties, the court did not abuse its discretion in the distribution of marital property because it is fair and just considering all the circumstances.[5]

---

[5] Although Weinle contends that the court did not consider the mobile home in its distribution of property, the court determined that Tower's interest in the mobile home was marital property with no value and awarded it to Tower in its distribution of marital property.

**D.     Attorney Fees**

[¶46]  Weinle generally argues that the court erred in awarding Tower attorney fees because she complied with the discovery process, despite the court's contrary finding, and she cannot afford to pay the award.

[¶47]  We review a court's award of attorney fees for an abuse of discretion.  *Sears*, 2023 ME 45, ¶ 24, 299 A.3d 15.  "Such an award should be based on the parties' relative financial ability to pay the costs of litigation as long as the award is ultimately fair under the totality of the circumstances, and the court may consider all relevant factors that serve to create an award that is fair and just."  *Id.* (quotation marks omitted).

[¶48]  The court acted within its discretion in ordering Weinle to pay $12,325 of Tower's attorney fees.  *See Miele v. Miele*, 2003 ME 113, ¶ 16, 832 A.2d 760.  The court found, with support in the record, that Weinle increased the cost of litigation due to her failure to comply with discovery orders and that Tower lacked the ability to pay litigation costs.  Furthermore, the court considered Weinle's ability to pay the award given the court's allocation of marital debts and imposed spousal support obligations.  We therefore discern no abuse of discretion and affirm the court's award of attorney fees.

22

The entry is:

Judgment affirmed.

———————————————

Pamela J. (Tower) Weinle, appellant pro se

Daniel W. Marra, Esq., Waterville, for appellee Estate of Alan R. Tower

Skowhegan District Court docket number FM-2019-206
FOR CLERK REFERENCE ONLY